# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**AMBER D. STEWART**                                                          **PLAINTIFF**

**V.**                    **CASE NO. 4:19-CV-00103 SWW-JTK**

**ANDREW SAUL,**
**Commissioner of Social Security Administration[1]**                         **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.   Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to District Judge Susan Webber Wright. You may file written objections to this Recommendation. If you file objections, they must be specific and must include the factual or legal basis for your objection.

Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Wright can adopt this Recommendation without independently reviewing the record. By not objecting, you may also waive any right to appeal questions of fact.

**II.  Introduction:**

Plaintiff, Amber D. Stewart ("Stewart"), applied for disability benefits on September 4, 2015, alleging disability beginning on August 18, 2015. (Tr. at 30). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 44). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Stewart has requested judicial review.

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

For the reasons stated below, this Court should affirm the decision of the Commissioner.

### III. The Commissioner's Decision:

The ALJ found that Stewart had not engaged in substantial gainful activity since the alleged onset date of August 18, 2015 (Tr. at 33). The ALJ found, at Step Two of the sequential five-step analysis, that Stewart had the following severe impairments: left and medial and lateral meniscus tears, status post left knee arthroscopy, partial medial meniscectomy, and partial lateral meniscectomy; irritable bowel syndrome; gastroparesis; anemia; fibromyalgia; obesity; major depressive disorder; and generalized anxiety disorder. *Id*.

At Step Three, the ALJ determined that Stewart's impairments did not meet or equal a listed impairment. *Id*. Before proceeding to Step Four, the ALJ determined that Stewart had the residual functional capacity ("RFC") to perform sedentary work with restrictions: 1) she is limited to work where interpersonal contact is incidental to the work performed, where incidental is defined as interpersonal contact requiring a limited degree of interaction such as meeting and greeting the public, answering simple questions, accepting payment, and making change; 2) she is limited to work where the complexity of tasks can be learned by demonstration or repetition within 30 days with few variables and little judgment; and 3) she is limited to work where the supervision required is simple, direct, and concrete. (Tr. at 35).

The ALJ found that Stewart was unable to perform any past relevant work. (Tr. at 42). Next, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Stewart's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, such as addresser and document preparer. (Tr. at 43). Therefore, the ALJ found that Stewart was not disabled. *Id*.

**IV. <u>Discussion</u>:**

    A.   Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

    B.   Stewart's Arguments on Appeal

Stewart argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that the ALJ erred at Step Three in his evaluation of the Adult Listing of Impairments ("Listings"), the ALJ did not properly evaluate medical opinions, and the RFC did not fully incorporate Stewart's limitations.

Stewart's arguments are cursory, with little citation to the record or discussion of medical evidence. When she does cite to the evidence, it pertains to fibromyalgia and mental impairments, so the Court will likewise limit its discussion to those impairments.[2]

The Listings define impairments that would prevent an adult, regardless of his age,

---

[2] Stewart had knee surgery and attested that it improved her condition. Her doctor prescribed exercise post-surgery. (Tr. at 842-853).

education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal citations omitted). That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work. *Id*. At Step Three, the burden rests squarely on the claimant to show he meets a Listing. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010).

Stewart claims she met a Listing based on fibromyalgia, but does not point to which Listing she allegedly met. Certainly, she was diagnosed with fibromyalgia, and complained of joint and muscle pain, stiffness, and trouble getting out of bed. She met the criteria for fibromyalgia when her doctor found 18 of 18 tender points. (Tr. at 785). Still, Stewart's sedimentation rate, which is a test run to detect fibromyalgia, was normal on September 3, 2015. (Tr. at 787). Normal examination findings are not indicative of disabling conditions. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). At a September 2015 doctor's appointment, Stewart had no joint deformities, normal range of motion, and no difficulty getting up and down from the chair or the examination table. (Tr. at 784-785). Her doctor told her she had no serious complications. *Id*. He suggested water aerobics therapy and low impact exercises. *Id*. A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). Stewart treated her condition conservatively with muscle relaxers and Mobic, and by the end of September 2015, she was walking up to one hour a day. (Tr. at 792).

At a visit with her PCP, Dr. Jeff Carfagno, M.D., Stewart said she was doing better, and she had normal motor strength in all extremities. (Tr. at 853-854). She had no inflamed joints and a normal gait. *Id*. In August 2016, Stewart had normal bones, joints, extremities, motor strength,

4

and motor tone. (Tr. at 1448). There is no record of treatment for fibromyalgia after 2016. (Tr. at 38). While there is no specific Listing for fibromyalgia, and Stewart does not point to any particular Listing, the ALJ properly evaluated the medical record and discussed her history of conservative treatment for fibromyalgia. He did not err at Step Three.

Stewart also claims that the RFC for sedentary unskilled work outstripped her abilities. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

Stewart said she could do things like light housework, take her kids to school, drive on occasion, and shop in stores. (Tr. at 60-61, 432-436). Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). Her doctor recommended exercise and prescribed only conservative care. No doctor placed any functional restriction on her. The RFC for sedentary work properly incorporated any physical limitations.

As for mental impairments, she engaged in a psychiatric care for depression and anxiety. Mental status exams were generally unremarkable. (Tr. at 802, 861, 896). Stewart showed some improvement with counseling. (Tr. at 900). Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992). In October 2015, Stewart told Dr. Carfagno that she was tolerating her psychiatric medication well and not feeling as depressed. (Tr. at 861).

Dr. Nicholaus Paal, Ph.D., evaluated Stewart in December 2015. (Tr. at 804). Her mental status was normal, and he found that she had an average IQ. (Tr. at 805). He said she could accomplish all activities of daily living without assistance. (Tr. at 806). Dr. Paal said that any difficulties in work functions would mainly be attributable to physical problems, and not psychological problems, although the two were related. *Id*. Dr. Paal did not review any other records upon examination. (Tr. at 804).

At a neuropsychological examination in June 2016, Stewart had a normal mental status examination, and she fully participated in her clinical history discussion. (Tr. at 1581-1587). The doctor found mild cognitive decline. *Id*. Any work function deficits were mild and she was encouraged to return to part-time work. *Id*.

In August 2016, Stewart began taking Wellbutrin. (Tr. at 1644). By October 2016, she said she was doing much better. *Id*. She reiterated that medication helped her in May 2017. (Tr. at 1742). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). In December 2017, Stewart said she was doing "ok." (Tr. at 1833). With generally normal mental status examinations, mild functional limitations, and improvement with treatment, the Court finds that the ALJ did not err in prescribing simple work in the RFC. Stewart has not shown mental impairments to be disabling.

Dr. Carfagno issued an opinion on February 22, 2016 (before Stewart demonstrated improvement with medication) that said Stewart was totally and permanently disabled based on her varied conditions. (Tr. at 838). He did not cite to any medical records or objective testing, and his opinion is contradicted by the other opinions in the record finding only mild impairments. An ALJ may discount or disregard the opinion of a treating physician when other medical assessments

6

are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of the opinions. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) Indeed, the state-agency reviewing physician found Stewart capable of unskilled work. (Tr. at 243). Dr. Carfagno was also vague in his assessment, finding that Stewart could only perform at 25% of a normal person's capacity, but never defining what that meant. (Tr. at 41, 1057). The ALJ properly discounted Dr. Carfagno's opinion and gave reasons for doing so. He gave appropriate weight to all medical opinions, based on their consistency with the record.

## V. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ did not err at Step Three, assigned an appropriate RFC, and properly evaluated medical opinions. The finding that Stewart was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 23rd day of August, 2019.

_____
UNITED STATES MAGISTRATE JUDGE